IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DISTRICT OF ST. THOMAS – ST. JOHN

| | | |
|---|---|---|
| LORRAINE SMITH, | ) | CIVIL NO. 3:10-CV-00039 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ALFRED MARSHALL and SIDNEY KATZ | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW AND ALTERNATIVELY FOR NEW TRIAL**

On June 18, 2008, the jury impaneled to hear this matter returned a verdict in favor of Plaintiff in the amount of Three Hundred Ninety Thousand ($390,000.00) Dollars in economic damages plus Nine Hundred Thousand ($900,000.00) in compensatory damages.  Defendant Katz contends that this judgment was the product of passion, prejudice or other improper considerations, and that he is entitled to judgment as a matter of law.

Defendant, Sidney Katz has moved this Honorable Court pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure for the grant of judgment in his favor as a matter of law and has made the alternative motion for a new trial.  Rule 50(b) of the Federal Rules of Civil Procedure provides in relevant part:

> *(b)* ***RENEWING THE MOTION AFTER TRIAL; ALTERNATIVE MOTION FOR A NEW TRIAL.*** *If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under* Rule 59. *In ruling on the renewed motion, the court may:*
> *(1) allow judgment on the verdict, if the jury returned a verdict;*
> *(2) order a new trial; or*
> *(3) direct the entry of judgment as a matter of law.*

(c) *GRANTING THE RENEWED MOTION; CONDITIONAL RULING ON A MOTION FOR A NEW TRIAL*.

> (1)   *In General. If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial.*

> (2)   *Effect of a Conditional Ruling. Conditionally granting the motion for a new trial does not affect the judgment's finality; if the judgment is reversed, the new trial must proceed unless the appellate court orders otherwise. If the motion for a new trial is conditionally denied, the appellee may assert error in that denial; if the judgment is reversed, the case must proceed as the appellate court orders.*

Rule 59 of the Federal Rules of Civil Procedure, concerning new trial provides in relevant part:

(a)   *IN GENERAL*.
> (1)   *Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:*
> *(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; . . .*

(b)   *TIME TO FILE A MOTION FOR A NEW TRIAL. A motion for a new trial must be filed no later than 28 days after the entry of judgment.*

## STANDARDS FOF JUDGMENT AS A MATTER OF LAW:

In considering a motion for judgment notwithstanding the verdict, a court uses the same standard applied in considering a motion for a directed verdict:  it cannot weigh evidence or judge credibility, and if there is conflicting evidence which could reasonably lead to inconsistent inferences, a judgment may not be entered.  Stated another way, the standard for granting a judgment notwithstanding the verdict is whether there was sufficient evidence upon which a jury could reasonably find for the plaintiff.  *Brown v. McBro Planning and Development,Co., 20 V.I. 242 (1987); Petitte v. Bodkin Development Corp., 23 V.I. 254 (1987); Damidaux v. Hess Oil Virgin Islands Corp., 18 V.I. 442 (1981).*  This standard requires the existence of evidence supporting reasonable inferences.  There must be such evidence as reasonable minds would accept as adequate to support the verdict.  A mere scintilla of evidence is not enough to support a verdict.

A judgment N.O.V. should be granted where there can be but one reasonable conclusion as to the proper judgment.  _Lattoo v. Bank of Nova Scotia, 18 V.I. 479 (1981); Fireman's Fund Ins. Co. v. Videfreeze Corp., 12 V.I. 286 (1975)._  Although the grant of a judgment N.O.V. in favor of the party having the burden of proof is rare and is reserved for extreme circumstances, such a motion should be granted where the evidence requires that result.  _Petitte v. Bodkin Development Corp, supra., Clark v. Bruckner 19 V.I. 74 (1982), Fireman's Fund Ins. Co. v. Videfreeze Corp.,supra._

The Court may also grant a new trial in the circumstances where the verdict was against the clear weight of the evidence or where the amount of the award is far in excess of the injuries suffered. _Virgin Islands v. Derricks, 810 F. 2d 50 (1987); Hourston v. Harvian, Inc.,  8 V.I. 533 (1972); Government v. Leycock, 19 V.I. 59 (1982); Herman v. Hess Oil Virgin Islands Corp., 10 V.I. 521 (1974); Government v. Grant, 19 V.I. 343 (1985)._

When considering a motion for a new trial which urges that the verdict is against the weight of the evidence, a judge may weigh the evidence for himself and substitute his judgment of the facts and credibility of the witnesses for that of the jury. _(Federal Rules of Civil Procedure 59(a); Clarke v. Bruckner, supra; Springfield Crusher. Inc. v. Transcontinental Ins. Co., 6 V.I. 38 (1967); Fireman's Fund Ins. Co. v. Videfreeze Corp., supra; Herman v. Hess Oil Virgin Islands Corp., 10 V.I. 521 (1974); Government v. Grant, 19 V.I. 343 (1983); Gumbs v. Pueblo Int'l, Inc. 823 F.2d 768 (1987); Rush v. Blanchard, 426 S.E. 2d 802 (1983);  Vinson v. Harley, 477 S.E. 2d 715 (1996); Chilson v. Allstate Insurance Co, 979 A. 2d 1078 (2009); Smith v. Kmart, 177 F.3d 19 (1999); Sheils Title Co. v. Commonwealth Land Title Ins. Co, 184 F. 3d 10(1999); Cigna Fire Underwriters v. MacDonald and Johnson, 86 F.2d 1260 (1996); Fernandez v. Corporacion Insular de Seguros, 79 F. 3d. 207 (1996); Kearns v. Keystone Shipping Co., 863 F.2d 177 (1988)._

## THE PLAINTIFF SUFFERED NO DAMAGE OR GROSSLY EXAGGERATED DAMAGES

The jury in the instant case awarded Three Hundred Ninety Thousand ($390,000.00) in economic damages and Nine Hundred Thousand ($900,000.00) Dollars in compensatory damages in the

face of little or no evidence of actual damages.   The evidence presented by Plaintiff of economic damage took the form of a workmen's compensation lien for disability benefits in the amount of Four Thousand Seven Hundred Ninety Two Dollars and Thirty One Cents ($4,792,31).   This amount was paid by the Department of Labor, Workmen's Compensation Division for lost wage benefits.   Other than the fact of existence of the payment itself, there is no evidence from any medical provider that the hours for which Plaintiff was compensated related causally to any injury suffered in the instant case.   In fact, Dr. Steven Grundfast, a pulmonologist testified that he first saw Plaintiff in September, 2008.   Dr. Grundfast stated that Plaintiff came to him with a long history of asthma, and as a result he was able to opine the events of June 2, 2008 caused Plaintiff to have an exacerbation of her asthma symptoms. Beyond this initial insult, Dr. Grundfast was not able to opine as to the cause of any other exacerbation, how many exacerbations Plaintiff had before she saw him in September, 2008 or the amount of exacerbations Plaintiff had between June 2, 2008 and her visit with him in September, 2008.   Dr. Grundfast and Dr. Audria Thomas both agreed that Plaintiff was prone to experience exacerbations of her asthma symptoms as a result of exposure to an unlimited number of allergens or irritants.   Both concluded that it was impossible to determine what allergen or irritant caused the repeated exacerbations.

No doctor attributed Plaintiff's loss of wages, to exposure to mold within the Marshall's Building, other than the wage loss attributable to June 2, 2008.   No doctor attributed Plaintiff's wage loss claim or Plaintiff's workmen's compensation disability benefits claim to conditions at the Marshall's Building.   Both Dr. Thomas and Dr. Grundfast agreed that for the most part Plaintiff's exacerbation and her need for continuing care was due to Plaintiff's failure to follow doctors' instructions and her failure to take medicines as prescribed.   The award of Three Hundred Ninety Thousand ($390,000.00) in economic damages under the facts of this case support the conclusion that the verdict was the product of passion, prejudice, improper juror considerations and was so far against the weight of the evidence that it indicated a fundamentally unfair trial.   Here, the verdict for economic

damages was wildly out of proportion to the proof at trial. The remedy, under the cases cited requires granting of a new trial in a forum other than the Virgin Islands.

The jury in the instant case also awarded Plaintiff Nine Hundred Thousand ($900,000.00) Dollars in compensatory damages. This award was also wildly disproportionate to any damage suffered by this plaintiff. The award is so out of proportion that it clearly displays that the decision was based not upon the evidence but had to be made based upon improper considerations warranting a new trial.

Plaintiff's treating physicians, Dr. Audria Thomas and Dr. Steven Grundfast each acknowledge that plaintiff had a long pre-existing history of asthma. The plaintiff's history of asthma extends as far back as 1998. Medical records that this court erroneously excluded from consideration by the jury showed that Plaintiff, between 2002 and 2007 had multiple treatments for her asthma from Doctors on Duty, a private health care facility. Pharmacy records from Doctor's Choice Pharmacy, also excluded erroneously by the court, showed treatment by various doctors and prescriptions filled by Plaintiff for drugs to treat her asthma between 2002 and 2007 (a time when Plaintiff claimed to have been symptom free). These prescriptions were signed for by Plaintiff and by her son Alvern Trotman.

Dr. Audria Thomas testified that she diagnosed the Plaintiff with emphysema caused by cigarette smoking, and concluded that this was the cause of her long term complaints. Although Dr. Grundfast disagreed with the diagnosis of emphysema, other doctors at Crystal Run Healthcare had diagnosed Plaintiff with COPD (Chronic Obstructive Pulmonary Disease) having no causal relationship to this case. Dr. Grundfast's diagnosis was asthma and his prognosis for Plaintiff was good, provided Plaintiff followed doctor's instructions and took medicines as prescribed. He went so far as to state that Plaintiff should have a good prognosis and would require little or no medicines if she were compliant.

The award of Nine Hundred Thousand ($900,000.00) Dollars in compensatory damages for an exacerbation of short duration is wildly out of line and indicates that something other than the evidence presented caused this jury to make such an award. The amount of the award standing alone requires the grant of a new trial.

The Court, over defense objection admitted testimony of Dr. Howard Weiner.  Defendant had moved to exclude this testimony on the basis that the doctor had never examined records of Ms. Lorraine Smith, had never examined her, and had never submitted a report as required by Rule 26 and because defendant never had the opportunity to depose this expert.  Defendant also was never provided any information concerning the terms under which Dr. Weiner was retained.

Dr. Weiner was allowed to testify that a person such as Plaintiff would suffer respiratory injury though he could not state the extent of such an injury.  He was allowed to testify that the degree of harm would vary from person to person.  It is respectfully submitted that the admission of this evidence violated Rule 26 of the Federal Rules of Civil Procedure, that the evidence violated Rule 403 of the Federal Rules of Evidence for its tendency to confuse and mislead the jury and violated the expert witness rules.

It is respectfully submitted that the error in the admission of this evidence helped to lead the jury to a shocking verdict not supported by the evidence properly admitted in this case.  This error also demands the grant of a new trial.

This court also failed to instruct the jury on Plaintiff's duty to mitigate her damages and to include in the jury form for damages awardable to be reduced based on the percentage attributable to this failure.  Defendant respectfully submits that the error of the court in failing to properly instruct the jury contributed to the outrageous verdict.  This failure of instruction also warrants a new trial if not standing alone in combination with other trial errors.

The Restatement of Torts 2d §912 requires that a plaintiff prove damages with reasonable certainty.  This section provides:

> One to whom another has tortiously caused harm is entitled to compensatory damages for the harm if, but only if, he establishes by proof the extent of the harm and the amount of money representing adequate compensation with as much certainty as the nature of the tort and the circumstances permit.

With respect to economic damages, the Restatement notes that "certain pecuniary harms such as loss of earnings may result from harm to the body and . . . as to these reasonable certainty of proof of the extent

of damage is required." *Id.* § 912 cmt. b.  If sufficient proof is not provided, a damage award cannot be sustained.  *See Franklin v. Virgin Petroleum Diamond, Inc.*, 53 V.I. 149, 151-52, 2010 V.I. LEXIS 31 (V.I. Super. Ct. Apr. 27, 2010).  The plaintiff also has the responsibility of providing the jury with "some evidentiary and logical basis for calculating or, at least, rationally estimating a compensatory award."  *Matta*, 2011 V.I. LEXIS 43, at *3 (citing *Huddell v. Levin*, 537 F.2d 726, 743-44 (3d Cir. 1976).  In the instant case, the Plaintiff has failed to produce proof of damages with reasonable certainty to justify an award.  In this case, a new trial is the appropriate remedy.

Although Defendant has requested a new trial and this argument is made first in this memorandum, a new trial is requested in the alternative, pursuant to rule 59 of the Federal Rules of Civil Procedure.  Defendant believes, in the first instance that he is entitled to judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS OF LIABILITY

On June 2, 2008, plaintiff and some other employees of the Bureau of Internal Revenue detected a foul order and became ill. Plaintiff suffered an exacerbation of asthma, a condition that she has had since at least 1998.

As result of the events of June 2, 2008, the Government of the Virgin Islands Bureau of Internal Revenue began a clean-up of the building and hired Environmental Concepts to determine the cause of the problem and to remediate whatever conditions that were found. Environmental Concepts performed testing and found that the air in the Marshall's/IRB Building contained high levels of cladosporium and aspergillus molds.

During this same time period the Government also retained the services of Central Air, who examined the air conditioning system. Central Air found that one of the trunk lines to one of the two air handlers servicing the first floor of the building had collapsed. The Government retained the services of Central Air to replace the duct work on the first floor of the Marshall's/IRB building.

During the course of their investigation and remediation Environmental Concepts determined that the origin of the contamination of the indoor air quality and reported its findings to the IRB by letter summary dated August 26, 2008. (Trial Exhibit 49). This letter provided: "We noticed the origination of the contamination and corrected the following problems:

      (1) Condensation from A/C piping
      (2) Leaks
      (3) Plumbing leak by bathroom
      (4) Drain pan in A/C units

On deposition, Mr. Maxcess Armantrading explained the source of contamination as being caused by a lack of maintenance of the air handlers and returns and that air fillers on air handlers did not fit properly and were not cleaned. In most areas there were no filters for the returns. He also found that diffusers were dirty which was evidence that the air handlers were poorly maintained. (Deposition of Maxcess Armantrading, April 20, 2010, 26:1-25, 27: 2-25, 28: 9-25, 29: 1-15, 20-25, 31: 1-21, 32: 1-2, 57: 12-25, 58: 1-25, 59: 1-25, 60: 1-25, 61: 1-25, 62: 1-25, 63: 1-9, 16-25, 64: 1-20). He found that the fiberglass duct work was old and decomposing and needed to be replaced on the first floor. (32: 10-25, 33: 1-16).

Mr. Armantrading inspected the building and found that the file room caused a problem because it was not ventilated and a wall needed to be built "all the way up" and painted to eliminate the moisture odor. He noted in particular that this room was problematic and recommended that a  hole be drilled in the building in this area to bring in outside air. Other sources of contamination were bathroom plumbing leaks. (Armantrading 36: 12-25, 37: 1-25, 38: 1-13).

Environmental Concepts completed its remediation work on July 6, 2008. All air quality tests on the Marshall's Building since remediation has shown excellent air quality. The air inside the Marshall's Building was a minimum of four (4x) times cleaner than the outside air. (Trial Exhibits 39, 52, 228). The only other problem in the Marshall's Building stemmed, not from air quality, but from the manner in which the air conditioning contractor removed the old duct work and failed to prevent fiberglass contamination. (Trial Exhibit 49).

No witness has provided evidence of the existence of mold in the Marshall's Building before June 2, 2008. All fact witnesses have testified that before this date there was nothing to indicate that there was mold in the building. Other than the opinion expressed by Environmental Concepts, no person has opined as to the cause of the mold in the Marshall's building and no evidence exists as to the cause of the mold.

### DEFENDANT KATZ HAS  NO LIABILITY UNDER RESTATEMENT §355

Restatement of Torts 2d §355 provides:

*Except as stated in §§ 357 and 360-362, a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession.*

The exceptions to this general rule of non-liability are contained in Restatement of Torts 2d Sections 357 and 360-362.

The exception contained in §357 concerns the situation where the landlord has contracted to repair the leased premises.  This section provides:

**§357.  Where Lessor Contract to Repair -**  *A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if*

> *(a)      The lessor, as such has contracted by a covenant in the lease or otherwise to keep the land in repair, and*
> *(b)      The disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and*
> (c) *The lessor fails to exercise reasonable care to perform his contract*.

The lease covering the Marshall's Building, Trial Exhibit "61", places the duty of maintenance on the Government of the Virgin Islands.  This duty extends to include the entire leased premises including the air conditioning, plumbing and electrical systems. Defendant Katz had the duty to maintain the roof, foundation and load bearing walls.

It is clear from the terms of the lease that any liability for damage caused by a failure to maintain the air conditioning system, and the plumbing would fall exclusively upon the Government of the Virgin Islands.  Equally clear is that where injury or damage was caused in part by the failure to maintain these systems, that percentage of liability attributable to these failures to maintain must, as a matter of law be assigned to the government.

According to the testimony of Maxcess Armantrading  and the report of Environmental Concepts dated August 26, 2008 (Trial Exhibit "49") .  The source of contamination of mold in the IRB building came from four (4) areas; (1) condensation from a/c piping, (2) leaks in the vault/file room (3) Plumbing leaks, and (4) drain pans from the air conditioning units. There is no question that items 1, 3, and 4 fall squarely within  the responsibility of the government.  Any jury finding that failed to assess an appropriate percentage of fault to the government for these failures would clearly be contrary to the evidence of the case.  A jury finding of no fault by the government would indicate a verdict that was based upon inappropriate considerations such as bias, prejudice or evidence other than presented at trial.

The lease (Trial Exhibit "61") and all testimony clearly discloses that the vault/file room was not a part of the original leased premises and was not an area for which Mr. Katz collected rent.  The room was built with government funds and the walls of this room were not load bearing.  The duty to build the wall up to the ceiling and to paint it so as to eliminate odor, as recommended by Environmental Concepts clearly rested exclusively with the Government of the Virgin Islands.  Any liability that attached to this room also, as a matter of law, had to attach to the Government.  The failure of a jury to assess liability in accordance with the lease was not only against the weight of the evidence but was contrary to what a reasonable jury could find.  Defendant Katz is entitled, as a matter of law to have his liability, if any, properly apportioned according to his degree of fault.  The decision to ignore the facts cannot be sustained.

The rule of non-liability of §355 for conditions arising after lessee has taken possession would control.  Mr. Katz could <u>not</u> be liable for the conditions described in the Environmental Concepts letter report, and as testified to by Maxcess Armantrading, as a matter of law.

The Restatement of Torts 2d §360 and 361 apply exceptions for portions of the land over which the landlord maintains control.  These provisions have no application to the instant case since the government occupied, according to the lease and all testimony, the entire Marshall's Building.  The sole remaining exception to §355 non-liability is contained in §362.  This section provides:

> **§ 362.  Negligent Repairs by Lessor. -** *A lessor of land who, by purporting to make repairs on the land while it is in the possession of his lessee, or by the negligent manner in which he makes such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use or given it a deceptive appearance of safety, is subject to liability for physical harm caused by the condition to the lessee or to others upon the land with the consent of the lessee or sublessee.*

This section provides for liability where a landlord makes actual repairs in a negligent manner and the lessee neither knows nor has reason to know of the dangerous condition of the land.

It is clear that no evidence was presented in the instant case of repairs that were made in a negligent manner.  The record is also completely devoid of proof as to the other elements of this exception.  There are no facts to support what the lessee knew or had reason to know.  In sum the rule of §355 non-liability compels judgment in favor of Defendant Katz as a matter of law.

## DEFENDANT KATZ HAS NO LIABILITY <br> <u>UNDER SECTION 356 OF THE RESTATEMENT</u>

The Restatement of Torts 2d Section 356 provides:

*§356.  Conditions Existing When Lessor Transfers Possession:  General Rule*

*Except as stated in §§ 357-362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession.*

This section by its terms provides for non-liability of a landlord for conditions existing when the lessee took possession.  Rules applicable to conditions that came into existence after a tenant takes possession

are governed by §355.  The exceptions to the rule of non-liability of §356 are contained in §§357 through 362 inclusive.

The court, in the instant case, *sub judice*, failed and refused to instruct the jury as to the rules of non-liability contained in §355 and 356 of the Restatement Second.  The court instructed the jury concerning the public use exception contained in §359 though this does not provide an exception to non-liability under §355, and only provides an exception under circumstances described in §356.

Restatement of Torts 2d §359 provides:

*§359.  Land Leased for Purpose Involving Admission of Public*

*A lessor who leases land for a purpose which involved the admission of the public is subject to liability for physical harm caused to persons who enter the land for that purpose by a condition of the land existing when the lessee takes possession, if the lessor*
   *(a)   Knows or  by the exercise of reasonable care could discover that the condition involves an unreasonable risk of harm to such persons, and*
   *(b)   has reason to expect that the lessee will admit them before the land is put in safe condition for their reception, and*
   *(c)   fails to exercise reasonable care to discover or to remedy the condition, or otherwise to protect such persons against it.*

The elements necessary to make operative this exception are that:

   (1) land must be leased for a purpose that involves admission of the public;
   (2) physical harm is caused;
   (3) by a condition of the land
   (4) existing when the lessee takes possession,
   (5) if lessor knows or with reasonable care could discover that the condition involves unreasonable risk of harm, and
   (6) has reason to expect that lessee will admit them before the land is put in safe condition; and
   (7) fails to exercise reasonable care to discover or remedy the condition or protect against it.

The first failure of proof/evidence in this case, involves the failure of plaintiff to establish by testimonial, documentary, or other evidence the existence of a condition at the time the lessee took possession.  There is a complete absence of evidence concerning what condition in the Marshall's Building forms the center of plaintiff's complaint.

In each of the illustrations following Restatement of Torts 2d §359, the plaintiff identified by evidence some condition about which defendant had potential liability.  Illustration #1 concerns disrepair of an upper landing existing at the time of the lease while illustration #2 concerns the bad

condition of wood work supporting the grandstand.  Illustration #3 concerns the dangerous condition of disrepair of a wharf and illustration #4 the height of a railing around a diving platform.  Illustrations #5 and #6 each concern badly worn and sloping stairs at the entrance of the building.  Finally, illustrations #7 and #8 involve the bad condition of woodwork supporting a grandstand and rocks in a swimming pool.  Each of the conditions, physical conditions, about which plaintiff complains is readily identified by the illustrations and the fact/evidence provided. In the instant case, the plaintiff has not established the existence of any particular condition on defendant's land that existed at the time the Government of the Virgin Islands began occupancy.

The next failure of evidence is the failure of plaintiff to establish that an identified condition on the land existing when lessee took possession "caused physical harm."  The plaintiff failed miserably in producing any evidence that a condition caused physical harm.

The plaintiff was allowed, over the objection of defendant, to produce and utilize the testimony of Mr. James Thibodeaux.  Mr. Thibodeaux was permitted to testify as a structural engineer.  At the outset it should be noted that the testimony of this expert should have been excluded for failure of plaintiff to make him available for deposition though such deposition was sought since November, 2011. It is respectfully submitted that to allow this expert to testify in the circumstances presented acted to the prejudice of defendant's ability to discover the nature and basis of opinions held by this expert.  This prejudice serves as an additional basis for the grant of a new trial.

Mr.  Thibodeaux testified that he visited the Marshall's Building in May, 2010.  He testified to conditions that he saw at the premises as they existed during the time of his visit.  None of the testimony offered went to conditions existing at the time the lessee took possession in 1995 and none of the testimony offered went to causation of physical harm.

Mr. Thibodeaux was permitted to testify to areas were moisture could (possibly) enter the building and the fact that the plenum was used for return air.  Mr. Thibodeaux fell well short of testifying that any of the construction in 1995 was negligently performed or failed to pass inspection by

government inspectors or that anything done did not conform to then existing codes.  The testimony of this witness was grounded in speculation, rather than science and did not deliver a causation opinion upon which plaintiff could rest a verdict in her favor.

No testimony or other evidence was offered to show a condition existing at the time the lessee took possession that "caused" the existence of mold.  Failing these elements of proof as to existence and causation, the exception to non-liability contained in Restatement Second §359 would not apply. Defendant Katz was, and is, entitled to judgment as a matter of law.

The plaintiff in the instant case also failed to establish by testimony or other evidence that Defendant Katz knew or should have know about a condition of the building that involved an unreasonable risk of harm.  Not only has plaintiff's evidence failed to establish the existence of a condition but there was no evidence offered on what Defendant Katz knew or with reasonable diligence should have known that provides a basis of liability.

Finally, the failure of plaintiff to offer evidence that the lessor had reason to expect that the government would admit the public before the land was put in a safe condition is also fatal to liability under §359.

In summary, the rule of non-liability contained in Restatement of Torts 2d §356 is the rule that governs this case.  It is the rule that entitles Defendant Katz to judgment as a matter of law.  The failure of evidence that makes operative the exception contained in §359 means that a jury was not permitted to come to another result.  The conclusion to be reached was and is a one way street of non-liability. Defendant Katz was, and is, entitled to a judgment as a matter of law.

### DEFENDANT KATZ IS ENTITLED TO JUDGMENT FOR FAILURE TO PROVE NOTICE OF A DEFECTIVE CONDITION.

The lease in the case,  *sub judice*,  Trial Exhibit 61 transfers possession of the entire premises known as the Marshall's building to the lessee, without the landlord retaining any control of the premises.  Under these circumstances, the landlord, Mr. Katz, could only be liable for obligations

breached under the lease contract of which he had notice and unreasonably failed to repair. There is no question that no person had actual knowledge of mold growth before the events of June 2, 2008 and no person had reason to know of conditions that caused mold growth before that date.

The Supreme Court of the Virgin Islands recently discussed and applied the Restatement provisions in a case involving injuries to a tenant's employee. In White v. Spenceley Realty, LLC, S. Ct. Civ. No. 2008-0065, 2010 V.I. Supreme LEXIS 30, at *12, 53 V.I. 666, 675 (2010), the landlord leased an entire office building to the Virgin Islands Lottery without retaining any control over or possession of any portion of the building. The terms of the lease placed the duty of maintenance on the tenant.

In separate incidents, a Lottery employee was injured first when she slipped and fell on water leaking from the toilet in the bathroom and then trying to avoid water dripping on to her work station through the roof. The employee sued the landlord to recover for her injuries. The Superior Court granted the landlord's motion for summary judgment, ruling that the landlord had no duty to maintain the plumbing fixtures or the roof and there were no material facts demonstrating that the landlord had notice of leaks.

On review, the Supreme Court of the Virgin Islands affirmed. First acknowledging the general rule that a landlord is not liable for conditions that arise after a tenant takes possession, the Supreme Court thereafter discussed the exceptions set forth in §§ 360 and 361. In doing so, the Supreme Court emphasized that the lease gave the Lottery possession of the entire building. As such, the landlord owed no duty to the Lottery or its employees to inspect or maintain the roof and toilet under those exceptions. The Supreme Court did, however, find error in the superior court's ruling that the landlord owed no duty under the exception set forth in § 357. Unlike the instant case, the lease there provided that the landlord shall be responsible for the repair of plumbing fixtures, potentially placing the landlord under a duty to repair the toilet. Testimony from representatives of both the landlord and the tenant, however, revealed an understanding that the tenant, not the landlord, was responsible for repairing the toilets. Because of

the factual disputes, the Supreme Court determined that the issue should not have been resolved on summary judgment.

If we assume for the sake of argument that Defendant Katz had a duty to maintain the Marshall's Building in a safe condition, the law would require him to have actual or constructive notice of a dangerous condition before liability may be imposed.  In the instant case the testimony was clear and uncontroverted that Defendant Katz was a good landlord who always did what was best for the building and was prompt in correcting problems after notice.  The notice required of mold in the Marshall's Building is lacking evidentiary support. This is especially true in view of the uncontroverted testimony of the witnesses in this case.

It is clear that absent notice of the defective condition and the failure to repair, there can be no liability.  _Canton v. Kmart Corp._, Civ. No. 05-0143, 2010 U.S. District Lexis 12646 (2010); _Bonelli v. U.S._, Civ. No. 07-48, 2009 U.S. Dist. LEXIS 103238 (D.V.I. Nov. 3, 2009) (quoting _David v. Pueblo Supermarket of St. Thomas_, 740 F.2d 230, 236 (3d Cir. 2004)); _O'Connell v. Radwyn Apts., L.P._, No. 05-13349, 2007 Pa. Dist. & Cnty. Dec. LEXIS 319 (Del. Cnty. Pa. Ct. Common Pleas June 7, 2007) _Joseph v. Speedy Gas, Inc._, D.C. Civ. App. No. 2007-0008, 2011 U.S. Dist. LEXIS 143057 (D.V.I. Dec. 12, 2011).

The facts of the instant case entitle Defendant Katz to judgment as a matter of law for failure of plaintiff to prove actual or constructive notice of a defective condition in the Marshall's Building that caused injury to the Plaintiff.

### DEFENDANT IS ENTITLED TO A NEW TRIAL DUE TO PRETRIAL PUBLICITY

The plaintiff, Lorraine Smith, was successful in trying the instant case in the court of public opinion.  The facts of the plaintiff's claim have been presented on at least three occasions before the Legislature of the Virgin Islands.  These legislative sessions have been televised to the general public and have contained the assertions of injury by plaintiff that she contends resulted from mold in Defendant's Building.  (Exhibit A).

The plaintiff's claims have been the subject of many newspaper articles that were contained in the Virgin Islands Daily News, the Avis, and the online newspaper The Source.  (A sampling of these are attached hereto as Exhibit B.)

The claims  of the plaintiff have been a source of political discourse and have been the topic of discussion in social media.  The discussion of the claim that defendant's building is sick and has resulted in injury was the subject of Crucians in Focus that allowed community members to blog their comments on the issues concerning defendant's building.  With little or no proof/evidence defendant's building has been labeled sick and branded the source of plaintiff's pre-existing woes.

The plaintiff through these devices has created an atmosphere of unfairness that resulted in the kind of verdict that was rendered by the jury on June 18, 2012; a verdict that was <u>not</u> based on the evidence presented at trial and which clearly had other outside influences.

It is respectfully submitted that the pre-trial publicity in combination with other prejudicial factors led the jury to a fundamentally unfair result that begs the grant of a new trial in a forum, other than the Virgin Islands, where the evidence rather than considerations of passion, prejudice and outside the court room opinion will control.

Rule 59(a) of the Federal Rules of Civil Procedure does not provide a list of proper reasons for which a new trial may be granted.  Courts have historically recognized that a new trial is appropriate in circumstances where a verdict is against the weight of the evidence, the verdict is excessive, and when a jury is improperly influenced or when erroneous instruction likely misled or confused the jury.  *Virgin Islands National Bank v. Tropical Ventures, Inc.,* 9 V.I. 429 (1973); *Brown v. McBro Planning and Development Co.,* 23 V.I. 242 (1987); *Government v. Toto, 12 V.I. 620 (1976); Bevans v. Triumpho,* 17 V.I. 144 (1980); *Clark v. Bruckner,* 19 V.I. 74 (1982); *Neal v. John,* 22 V.I. 261 (1986); *Gumbs v. Pueblo Int'l, Inc.,* 823 F. 2d 768 (1987); *Creque v. Cintron,* 17 V.I. 69 (1980); *Castillo v. Autokirey, Inc.,* 379 F. 3d. 4 (2004); *Eiland v. Westinghouse Electric Corp.m* 58 F. 3d 176 (1995); *Linn v. United Plant Grand Workers of America,* 388 U.S. 53 (1966).

The Court also may grant a new trial where a verdict was the likely result of prejudice or as a means to avoid a prejudicial result. <u>Heimlicher v. Steele</u>, 615 F. Supp 2d 884 (2009); <u>V,I National Bank v. Tropical Venture, Inc.</u>, 9 V.I. 429 (1973).  Defendant Katz asserts that the court errors in instructing the jury as to non-liability under Restatement 2d Sections 355 and 356, the refusal of the court to instruct on Plaintiff's failure to mitigate her damages, the exclusion of medical records of Doctors on Duty and the records of Doctor's Choice Pharmacy acted in combination with pretrial publicity to produce a fundamentally unfair trial.

The fact that Defendant was forced to trial while he was not able to be present to aid in the jury selection, or the defense of this matter, also, contributed to the trial's unfairness.  Other evidentiary errors such as the exclusion of the statement of Clement Vanterpool of Central Air, also contributed to this result.

It is respectfully submitted that the combination of pretrial publicity and the trial errors listed require a new trial, in fairness to the substantive rights of the Defendant.

## <u>FAILURE OF JUROR DISCLOSURES REQUIRE A NEW TRIAL</u>

The failure of a potential juror to disclose matters material to jury selection may provide a basis for the grant of a new trial.  Generally, a new trial will not be ordered where a juror responds erroneously but in good faith unless the party complaining can demonstrate that the juror failed to answer honestly a material question and that a correct response would have provided a valid basis for a challenge for cause.  *Government of the V.I. v. Bodie*, *7 V.I. 507 (1970);* *Neal v. John*, *11 V.I. 261 (1986).*

During the course of the trial in the instant case, counsel for Defendant Katz informed the court of his belief that the case was fixed.  This belief was spurred by the testimony of Mr. Louis  Willis that was purposefully false and in contradiction to testimony previously given at deposition.  In the process of reviewing the deposition of Mr. Willis and his willingness to change his previously sworn testimony

it occurred to counsel that one juror had acknowledged working part-time at the legislature, though his juror information form did not make this disclosure. The testimony of Mr. Willis brought home the fact that the juror in question was a potential witness to legislative proceedings on the mold issue and worked directly under Mr. Willis who was the Executive Director of the Legislature. The court declined to make any inquiry of the juror concerning counsel's suspicion stating that the court would require more evidence before an inquiry would be undertaken.

Defendant's counsel had previously objected to Mr. Emmet Petersen, an EMT remaining on the jury after his late disclosure of having treated some of the plaintiffs in a companion case and having visited the scene. This juror was allowed to remain a part of the panel and was only excused near the close of plaintiff's case in chief. Defendant's counsel complained that this juror and the one who was a part-time legislature employee were potential witnesses in the jury room.

Since the trial other information has come to the attention of defendant's counsel  First, Juror Eugene Kuntz, who was the foreperson had stated that he had previously been married to Cheryl Kuntz, a plaintiff in the companion case. What Mr. Kuntz failed to disclose to the court was that he was married to Cheryl Kuntz during the events of June 2, 2008 and was only divorced from her on February 2, 2011. He also was a witness in the jury panel. (Exhibit "C").

Mr. Kyle Monsanto, Juror #88 disclosed that he was related to a witness in the case, Mr. Stephen Monsanto but stated that this would not affect his impartiality. Mr. Kyle Monsanto stated that all persons with this surname on St. Thomas are related but that he and Stephen Monsanto were not close cousins. The Court denied defendant's request that Kyle Monsanto be removed for cause.

What was not disclosed by Juror Kyle Monsanto was that Harriet Monsanto, an IRB employee had testified in the legislature on August 24, 2009 concerning mold at the Marshall's Building and alleged injury and damage she experienced as a result of mold exposure. (Exhibit "A").  In view of this testimony, it appears that Kyle Monsanto was a fourth witness in the jury room.

After the close of this case, and as a result of posting on the social media, Facebook, it was learned that Vernon Hodge, Juror 94 is related to Nicole Hodge, one of the plaintiff IRB employees in the companion case.  Juror Vernon Hodge failed to disclose this familial relationship to Nicole Hodge (Exhibit "D").  This juror was a potential fifth witness in the jury room.

It is clear that Defendant was entitled to have this case tried before impartial jurors.  The fact that five of the original jurors present issues of impartiality sufficiently taints the process such that a grant of a new trial is warranted.  When these juror issues are viewed together with issues related to pre-trial publicity, politically motivated hearings, blog postings and other trial related errors, the appropriateness of a new trial becomes clear.  The new trial if granted should be relocated to a place outside the Virgin Islands as will afford the defendant a fair trial by an impartial jury.

DATED:  July 16, 2012                    /s/ Robert L. King, Esq.
                                         ROBERT L. KING, ESQUIRE
                                         LAW OFFICES OF ROBERT L. KING, ESQ.
                                         1212 Bjerge Gade, PO Box 9768
                                         St. Thomas, Virgin Islands 00801-2768
                                         VIB NO. 188

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of July, 2012, I electronically filed the foregoing with the Clerk of the Court using the EM/ECF system, which will send a notification of such filing (NEW) to the following:

Lee Rohn, Esq.
Lee@rohnlaw.com

                                         /s/ Robert L. King, Esq.