```
            DISTRICT COURT OF THE VIRGIN ISLANDS
            DIVISION OF ST. THOMAS AND ST. JOHN
```

LORRAINE SMITH,                     )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )    Civil No. 2010-39
                                    )
SYDNEY KATZ,                        )
                                    )
        Defendant.                  )
_____)

ATTORNEYS:

**Lee J. Rohn, Esq.**
Lee J. Rohn and Associates
St. Croix, VI
    *For the plaintiff,*

**Robert L. King, Esq.**
Law Offices of Robert L. King
St. Thomas, VI
    *For the defendant.*

## ORDER

**GÓMEZ, J.**

Before the Court is the motion of plaintiff Lorraine Smith for a new trial in this matter.

### I.   FACTUAL AND PROCEDURAL HISTORY

The plaintiff, Lorraine Smith ("Smith") was an employee of the Virgin Islands Bureau of Internal Revenue (the "VIBIR"). During the course of her employment, the VIBIR operated out of a building at 9601 Estate Thomas, St. Thomas, Virgin Islands (the "Marshall Building"). The VIBIR leased the Marshall Building from the defendant, Sydney Katz ("Katz").

While working in the Marshall Building, Smith claims that, in or around June of 2008, she began experiencing various respiratory ailments, which eventually led to a diagnosis of chronic asthma and an ultimate diagnosis of chronic obstructive pulmonary disease ("COPD"). She claims that these ailments were caused by an unusually high amount of mold spores in the air inside the Marshall building. She further claims that the prevalence of these mold spores was due to the improper construction of the building, which allowed the mold to fester, and poor ventilation, which failed to remove the particulates from the building's air supply.

Smith initiated this action on June 9, 2009, in the Superior Court of the Virgin Islands. Thereafter, it was removed to this Court.

A trial before a jury in this matter commenced on June 11, 2012 (the "initial trial"). On June 18, 2012, the jury returned a verdict. The jury found that Katz, as a lessor, failed to use reasonable care to protect from a harmful condition, and negligently failed to warn of this harmful condition. The jury further found that Katz's negligence was the proximate cause of Smith's injuries and concluded that he was liable to Smith in the amount of $1,290,000, comprised of $390,000 in economic losses and $900,000 in non-economic losses. The Court thereafter entered judgment on the verdict.

Thereafter, Katz moved for judgment as a matter of law, or, in the alternative, for remittitur under Federal Rule of Civil Procedure 59 ("Rule 59"). The Court, in a memorandum opinion and order dated March 22, 2013, denied Katz's motion for judgment as a matter of law, but ordered remittur of the damage award to $150,000, comprised of $50,000 in economic losses and $100,000 in non-economic losses.

On April 10, 2013, Smith gave notice that she rejected the remittitur and demanded a new trial on damages. Trial on the issue of damages began on September 30, 2013 (the "damages trial"). (ECF No. 495.) The jury was charged on October 2, 2013. The next day, on October 3, 2014, Katz filed his motion for directed verdict and to dismiss. On October 4, 2014, the jury awarded Smith $55,000 in non-economic damages, and $20,000 in economic damages.

Smith filed the instant motion for new trial on March 31, 2014, before a final judgment had been entered.  Katz opposes the motion.

## II.  DISCUSSION

A motion for a new trial pursuant to Federal Rule of Civil Procedure 59 ("Rule 59") may be granted "on all or some of the issues--and to any party . . . ." Fed. R. Civ. P. 59(a). There are three principal grounds on which a motion to alter or amend judgment may be based: "(1) an intervening change in the

controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct a clear error [of law] to prevent manifest injustice." *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (alterations in original) (quotation marks omitted).

### III. ANALYSIS

Smith argues that the Court committed two errors which require the granting of a new trial: (1) the Court prevented Smith's experts from testifying as to specific causation; and (2) the Court excluded testimony as to certain aspects of the worker's compensation lien that Smith is subject to, and failed to instruct the jury on the worker's compensation lien. Each will be addressed in turn.

#### A. Expert Testimony on Specific Causation

Smith asserts that the Court improperly excluded certain expert testimony on the issue of causation. That argument is best addressed after consideration of the context in which it is raised.

When the Court remitted the damages award made by the jury in the initial trial, Smith had the option of accepting the remittitur or demanding a new trial on the issue of damages. *See, e.g.*, *Lowe v. Gen. Motors Corp.*, 624 F.2d 1373, 1383-84 (5th Cir. 1980)("Of course, if the plaintiffs refuse to remit, the District Court may order a new trial strictly on the issue

of damages."). She elected to demand a new trial on the issue of damages. (ECF No. 476)("COMES NOW Plaintiff, by and through counsel, and gives notice to the Court that she does not accept remittitur and demands a new trial on damages.") The Court then scheduled the damages trial. (ECF No. 495.)

Smith's election is not without limits.  Indeed, it has been established by the Court of Appeals for the Third Circuit that where a jury has found liability, it violates the Seventh Amendment to allow liability issues to be retried in a subsequent damages trial. *See In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1185 (3d Cir. 1993).

In *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144 (3d Cir. 1993), the district court bifurcated liability from damages in a complex antitrust matter. *See In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1181-82 (3d Cir. 1993). The jury in the liability trial found in favor of the plaintiffs on the issue of causation. *Id*. During the damages trial, the plaintiffs argued that the defendants' unlawful non-competitive behavior resulted in the plaintiffs losing a business opportunity. *Id.* at 1183. The plaintiffs contended that the loss of that business opportunity had resulted in the loss of profits. *Id*. The plaintiffs offered evidence necessary to calculate damages under that theory.  *Id.* In response, the defendants presented evidence that there was

another cause for the plaintiffs' failure to receive the business opportunity. *Id.* The plaintiffs moved for a mistrial. *Id.* at 1182-84. The district court denied the motion. *Id.* The plaintiffs received only nominal damages. *Id.*

The Third Circuit reversed the district court's ruling on the plaintiffs' motion for a mistrial. *Id.* at 1185. The Circuit found that allowing evidence as to causation in a damages trial, following a jury verdict as to the issue of liability, violated the Seventh Amendment. *See id.* The Seventh Amendment, the Court stated, prohibits reexamination of facts already determined by a jury. *See id*. at 1183. Because the damages jury had been allowed to reconsider facts already determined by the liability jury, the Court ordered a retrial of the plaintiffs' damages case. The Third Circuit did *not* order retrial as to all issues, confining the retrial purely to damages. *Id.*

Bifurcation between liability and damages is *de rigeur* in remittitur cases. Where a court finds that a damages award is excessive, that court may order a new trial or partial new trial on damages alone. *See Spence v. Board of Educ. Of Christina Sch. Dist.*, 806 F.2d 1198, 1205 (3d Cir. 1986)("[T]he trial court may properly set aside a verdict and grant a complete new trial or a partial trial on damages where the damage award is excessive.") Normally, courts give plaintiffs the choice between remittitur and a partial new trial on damages. *See Evans v. Port Auth. of*

*N.Y. and N.J.*, 273 F.3d 346, 353-54 (3d Cir. 2001)("Normally, where a District Court denies a defendant's motion for a new trial as to damages, yet concludes that a jury verdict is excessive, warranting remittitur, denial of the motion for new trial is conditioned on the plaintiff's acceptance of the remittitur.")

In this case, the Court ordered a new trial as to damages only. Liability had already been determined. A retrial of causation would have placed in issue before a jury a matter that had previously been determined by a prior jury. Disrupting the prior jury's factual determinations would be an affront to the Seventh Amendment right to a jury trial. *See Erie Iron Ore*, 998 F.2d at 1185. The Court thus confined the trial only to the contested area of damages. To that end, the Court instructed

> I'm just going to remind counsel that we're not going to do a retrial of the initial trial, so I urge you to stay away from causation.
>
> I mean, I don't suspect it is going to take me very long to rule if objectionable content is presented, so I just urge you to be cautious.
>
> This is a trial about damages. There is wide discretion that's allowed to the trial court in this type of trial. And I think we want to keep the jury on matters that don't run afoul of 403 that confuses them.
>
> They're not here to determine whether someone is negligent, or whether the negligent conduct caused the injury, or, as I will instruct them, some injury.

> The real question and their real question is what is appropriate to compensate for the injury.

(Sept. 30, 2013, Trial Tr. 32:6-21.) That approach is consistent with the Third Circuit's concerns regarding the Seventh Amendment. *See In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 452 (3d Cir. 1997)("The Seventh Amendment requires that, when a court bifurcates a case, it must divide issues between separate trials in such a way that the same issue is not reexamined by different juries.")

Moreoover, the introduction of the expert testimony that Smith proposed was problematic. Smith attempted to introduce expert testimony as to specific causation. Specifically, she attempted to introduce testimony that mold of the type that was in the IRB building could and did cause her now-chronic asthma. The Court first notes that it is clear that this testimony would have fallen outside the scope of a damages trial. That said, contrary to Smith's arguments in her motion, Smith's experts were not excluded or limited in their testimony for that reason alone. Rather, Smith's experts were primarily limited in their testimony due to late or insufficient expert disclosures under Federal Rule of Civil Procedure 26.

The deadline for expert disclosures in this case was June 1, 2011. (Sept. 30, 2013, Trial Tr. 12:9.) That date was not

altered following the order for a new trial on damages. (Sept. 30, 2013, Trial Tr. 12:12-13.) As to Dr. Richard W. Moore, Smith failed to file any expert disclosure prior to the June 1, 2011, date. (Sept. 30, 2013, Trial Tr. 12:16-17.)  As the Court indicated at trial, though it understands that due to the passage of time there might be some need to supplement, that did not excuse the failure to file timely notice in the first instance.

   As to Dr. Adam Shapiro, Smith timely filed the necessary disclosures for Dr. Shapiro to testify as a treating physician. (Sept. 30, 2013, Trial Tr. 15:24.) No further disclosure was timely provided that would allow Dr. Shapiro to testify as an expert.  The Court allowed Dr. Shapiro to testify as a treating physician. (Sept. 30, 2013, Trial Tr. 34:22-23.)  Dr. Steven Grundfast, another treating physician, was similarly limited. (Sept. 30, 2013, Trial Tr. 237:14-18.)  Drs. Shapiro and Grundfast were not only limited because they might stray into areas of causation, but because they had not been qualified as experts on causation. (*See* Sept. 30, 2013, Trial Tr. 237:14-18.) Dr. Howard Weiner was discussed as a potential witness, but ultimately was not called to testify.

   In considering the Court's adherence to the line between causation and damages, as well as the discovery issues related to Smith's sought-after expert testimony, the Court finds that

no error of law was committed in preventing Smith's experts from testifying to specific causation.

### B. Worker's Compensation Lien

At trial, Smith presented testimony from Wanda Morris ("Morris"), director of the Workmen's Compensation Administration. (Sept. 30, 2013, Trial Tr. 175:7-12.) Morris testified that she was "responsible for obtaining refunds of workmen's comp paid[.]" (Sept. 30, 2013, Trial Tr. 175:20-23.) Morris further testified that the "government insurance fund must be reimbursed if there's a third-party lawsuit." (Sept. 30, 2013, Trial Tr. 176:5-8.) Morris stated that Smith owed Workmen's Compensation $29,212.54. (Sept. 30, 2013, Trial Tr. 181:9-12.) The only thing that Morris was prevented from testifying about was the definition of the term "third-party lawsuit." (Sept. 30, 2013, Trial Tr. 176:10-22.) The Court clarified for counsel that issues of fact were proper for the witnesses, but issues of law would be instructed on, if necessary. (Sept. 30, 2013, Trial Tr. 177:22-178:3.)

At the charging conference, Smith requested a jury instruction on the issue of the Workman's Compensation lien. The Court did not instruct on the lien, but allowed counsel to argue it in their closing arguments. (Oct. 2, 2013, Trial Tr. 207:9-13.) The Court believed then, as it believes now, that the testimony in combination with counsel's argument alleviated any

need for a jury instruction on workman's compensation. (Oct. 4, 2013, Trial Tr. 9:6-14.)

An instruction on the finer points of workman's compensation law would have confused the issues. It was already in evidence that Smith "owed" workman's compensation $29,212.54 and that a third-party lawsuit required reimbursing the government for workman's compensation. The arrangement with workman's compensation was repeatedly called a "lien." (*See, e.g.*, Sept. 30, 2013, Trial Tr. 180:18.) Instructing the jury on Smith's need to repay a lien would be akin to including a jury instruction that Smith needed to pay her medical bills. It was unnecessary, and would have served no purpose other than to confuse the jury and needlessly complicate the instructions.

The premises considered, it is hereby

**ORDERED** that Smith's motion for a new trial is **DENIED**.

S_____
**Curtis V. Gómez
District Judge**